```
                    United States District Court
                      District of Massachusetts
```

| | |
|---|---|
| Select Hospitality, LLC,       ) | |
|        Plaintiff,                  ) | |
|        v.                          ) | Civil Action No. |
|                                 ) | 20-11414-NMG |
| Strathmore Insurance Company,  ) | |
|        Defendant.                  ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This is a putative class action brought by Select Hospitality, LLC ("Select") on behalf of itself and several putative classes of other persons and entities who own interests in businesses insured by Strathmore Insurance Company ("Strathmore") that suffered business interruption losses as a result of the COVID-19 pandemic.  Pending before the Court is defendant's motion to dismiss the complaint.

I.   **Background**

Select is a Massachusetts limited liability company that owns and operates the Grand Tour restaurant ("Grand Tour") in downtown Boston, Massachusetts.  Grand Tour was covered by a

-1-

commercial property insurance policy ("the Policy") issued by Strathmore for a one-year term beginning on January 24, 2020.

The Policy provides for Business Income (and Extra Expense) Coverage for income lost and expenses incurred during a necessary "suspension" of operations caused by "direct physical loss of or damage to" the insured property. Additional coverage is provided by the Policy for losses "caused by action of civil authority that prohibits access" to the insured premises when a Covered Cause of Loss "causes damage to property other than" the insured location as long as two additional conditions are met. Those conditions need not be addressed to resolve this motion. The Policy does not contain a coverage exclusion for losses caused by viruses, bacteria and other disease-causing agents.

During the term of the Policy, state and local governments, including the Commonwealth of Massachusetts and the City of Boston, issued various orders in response to the COVID-19 pandemic ("Government Orders"). Those orders mandated, <u>inter alia</u>, that restaurants temporarily suspend on-premises dining and limit operations to carry-out and delivery services. Plaintiff alleges that its operations have remained severely restricted even after on-premises dining in Massachusetts was allowed to resume in June, 2020.

On April 1, 2020, Select submitted a claim to Strathmore seeking insurance coverage under the Policy for its business interruption losses purportedly caused by the Government Orders. Strathmore denied the claim on April 13, 2020.  According to plaintiff, Strathmore failed to inspect or review the Grand Tour property or documents concerning its business activities in 2020 and implemented a national policy of denying claims related to losses caused by COVID-19 without investigation.

Plaintiff filed its complaint in this Court on July 27, 2020, on behalf of itself and several other putative classes of persons and entities that 1) owned interests in businesses currently insured by defendant under insurance policies lacking express virus exclusions and 2) suffered business interruption losses as a result of the COVID-19 pandemic.

The complaint asserts three counts against defendant: 1) declaratory judgment that the Strathmore policies cover the business interruption losses of Select and other members of the classes (Count I); 2) breach of contract for failure to pay business income and civil authority coverage under the Policy (Count II); and 3) for violation of M.G.L. c. 93A ("Chapter 93A") for denying the claims of Select and other members of the

classes without conducting a reasonable investigation (Count III).

Defendant filed its motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) in September, 2020, which plaintiff timely opposed.

## II. **Motion to Dismiss**

### A. **Legal Standard**

To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 228 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the claim as true and draw all reasonable inferences in the claimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the claim are sufficient to

state a cause of action, a motion to dismiss must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual allegations in a claim, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id.

Under Massachusetts law, the interpretation of an insurance policy is a question of law. See Ruggerio Ambulance Serv. v. Nat'l Grange Mut. Ins. Co., 430 Mass. 794, 797 (2000).  Courts are to

> construe an insurance policy under the general rules of contract interpretation, beginning with the actual language of the polic[y], given its plain and ordinary meaning.

Easthampton Congregational Church v. Church Mut. Ins. Co., 916 F.3d 86, 91 (1st Cir. 2019) (internal citation omitted). Although ambiguous words or provisions must be resolved against the insurer, id. at 92,

> provisions [that] are plainly and definitely expressed in appropriate language must be enforced in accordance with [the policy's] terms.

High Voltage Eng'g Corp. v. Fed. Ins. Co., 981 F.2d 596, 600 (1st Cir. 1992) (internal citation omitted).

**B.   Application**

   **1.   Breach of Contract – Business Income & Extra Expense Coverage (Count II)**

Strathmore contends that Select fails to state a claim for business income and extra expense coverage because it cannot plead facts sufficient to show "direct physical loss of or damage to" the Grand Tour restaurant.

First, Strathmore correctly observes that Select has not plausibly alleged that COVID-19 was present at its insured property or that its losses resulted from the presence of the virus.  Instead, the complaint is clear that the suspension of on-premises dining mandated by the Government Orders purportedly caused the losses for which it now claims reimbursement.

Second, even if the complaint plausibly alleged that the presence of COVID-19 caused business interruption losses, Select would not be entitled to coverage under the Policy.  Courts in Massachusetts that have had occasion to interpret the phrase "direct physical loss" have done so narrowly, concluding that a covered claim requires some kind of tangible, material loss. See, e.g., Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins. Co., No. 14-13649-JCB, 2015 U.S. Dist. LEXIS 187495, at *18 (D. Mass. Sept. 22, 2015) (intangible losses do not fit within the definition of "direct physical loss");

Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co., 321 F. Supp. 2d 260, 264-65 (D. Mass. 2004) (collecting cases). Accordingly, the plain meaning of "direct physical loss"

> require[s] some enduring impact to the actual integrity [of the insured premises and] does not encompass transient phenomena of no lasting effect.

SAS Int'l, Ltd. v. General Star Indem. Co., No. 1:20-cv-11864, 2021 U.S. Dist. LEXIS 31093, at *10 (D. Mass. Feb. 19, 2021).

The COVID-19 virus does not impact the structural integrity of property in a manner contemplated by the Policy and thus cannot constitute "direct physical loss of or damage to" property. A virus is incapable of damaging physical structures because "the virus harms human beings, not property." Wellness Eatery La Jolla LLC v. Hanover Ins. Grp., No. 20cv1277, 2021 U.S. Dist. LEXIS 23014, at *16 (S.D. Cal. Feb. 3, 2021). The presence of the virus at insured locations

> would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant.

Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co., No. 1:20-CV-665, 2020 U.S. Dist. LEXIS 234939, at *20 (W.D. Tex. Dec. 14, 2020).

Many other courts have concluded likewise and have dismissed complaints containing similar allegations. See, e.g., SAS Int'l, Ltd., 2021 U.S. Dist. LEXIS 31093, at *8 n.4 (D. Mass. Feb. 19, 2021) ("[N]o reasonable construction of the phrase 'direct physical loss,' however broad, would cover the presence of a virus."); Uncork & Create LLC v. Cincinnati Ins. Co., 2020 U.S. Dist. LEXIS 204152, at *13-14 (S.D.W. Va. Nov. 2, 2020) ("[E]ven actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property [and] the pandemic impacts human health and human behavior, not physical structures."); Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., No. 20-CV-907-CAB-BLM, 2020 U.S. Dist. LEXIS 182406, at *2-3 (S.D. Cal. Oct. 1, 2020) ("[T]he presence of the virus itself . . . do[es] not constitute direct physical loss[] of or damage to property.").

Select nonetheless insists that it need not allege a tangible alteration of its insured property because the presence of non-tangible contaminants can constitute a "direct physical loss" under Massachusetts law, citing the decisions in Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399 (1st Cir. 2009) as well as Matzner v. Seaco Ins. Co., No. 96-0498-B, 1998 Mass. Super. LEXIS 407 (Mass. Super. Ct. Aug. 12, 1998) and Arbeiter v. Cambridge Mutual Fire Insurance Co., No. 9400837,

1996 WL 1250616 (Mass. Sup. Ct. Mar. 15, 1996) for support. Those decisions are inapposite, however, because the "loss of use" was caused by an odor or fumes rather than the Government Orders at issue in the instant case. Courts in Massachusetts confronted with similar claims have distinguished those decisions in finding a lack of coverage. See Kamakura, LLC v. Greater New York Mut. Ins. Co., No. CV 20-11350-FDS, 2021 WL 1171630, at *7 (D. Mass. Mar. 9, 2021); SAS Int'l, Ltd., 2021 U.S. Dist. LEXIS 31093, at *7-8.

Similarly, Select relies on the oft-cited decisions in Studio 417, Inc. v. Cincinnati Ins. Co., 478 F. Supp. 3d 794 (W.D. Mo. 2020) and Blue Springs Dental Care, LLC v. Owners Ins. Co., No. 20-CV-00383-SRB, 2020 U.S. Dist. LEXIS 172639 (W.D. Mo. Sept. 21, 2020) to demonstrate that dismissal is inappropriate. Multiple courts have considered those decisions of United States District Judge Stephen Bough and have found them to be outliers. See SAS Int'l, Ltd., 2021 U.S. Dist. LEXIS 31093, at *10-11 n.8 ("[C]ourts have either tiptoed around [the] holding [in Studio 417, Inc.], criticized it, or treated it as the minority position."); Cafe Plaza De Mesilla, Inc. v. Cont'l Cas. Co., No. 2:20-cv-354, 2021 U.S. Dist. LEXIS 29163 (D.N.M. Feb. 16, 2021) ("Blue Springs Dental Care, LLC, represents an outlier case and [] the weight of recent authority, created by the deluge of

-9-

coronavirus-related insurance disputes, favors [the insurer's] position in almost uniformly rejecting [the insured's] reasoning."). It is clear that the weight of legal authority supports dismissal of plaintiff's claim for business income and extra expense coverage in Count II.

Select also opposes dismissal of Count II by emphasizing that Strathmore chose not to include a specific virus exclusion in the Policy. That argument is, however, unavailing. The "absence of an express [virus] exclusion does not operate to create coverage" for pandemic-related losses. SAS Int'l, Ltd., 2021 U.S. Dist. LEXIS 31093, at *9 (quoting Given v. Commerce Ins. Co., 440 Mass. 207, 212 (2003)). Under the express terms of the relevant provision of the Policy, Select is entitled to coverage only for losses resulting from "direct physical loss of or damage to" its insured property and the absence of a virus exclusion does not insinuate the expansion of such coverage.

Accordingly, Count II of the complaint will be dismissed with respect to the claim for coverage under the business income and extra expense provisions of the Policy.

> 2. **Breach of Contract – Civil Authority Coverage (Count II)**

Strathmore also contends that the complaint fails to state a claim for coverage under the Policy's civil authority

provision. Specifically, it asserts that Select can identify no damage to property other than the insured premises and that the Government Orders do not "prohibit access" to Grand Tour.

The civil authority provision of the Policy requires Strathmore to pay for Select's business interruption losses resulting from an action of civil authority only if that action "prohibits access" to the Designated Properties. Many courts that have addressed equivalent civil authority provisions have drawn a clear line between actions that "prohibit" access to insured properties and those that merely "limit" such access. See, e.g., Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co., No. 20 CV 50284, 2021 U.S. Dist. LEXIS 20826, at *12-13 (N.D. Ill. January 19, 2021) (dismissing claim for civil authority coverage because the relevant orders "did not forbid or prevent the ability to enter" the insured premises but rather "limited the types of services that could be provided"); Brian Handel D.M.D., P.C. v. Allstate Ins. Co., No. 20-cv-3198, 2020 U.S. Dist. LEXIS 207892, at *9-10 (E.D. Pa. Nov. 6, 2020) (dismissing claim for civil authority coverage because "the [Pennsylvania COVID-19] orders limit, rather than prohibit, access to the property"); Sandy Point Dental, PC v. Cincinnati Ins. Co., No. 20-cv-2160, 2020 U.S. Dist. LEXIS 171979, at *7-8 (N.D. Ill. Sept. 21, 2020) (dismissing claim for civil authority

coverage because "coronavirus orders have limited plaintiff'[s operations, [but] no order issued in Illinois prohibits access to plaintiff's premises").

Although Select alleges that the Government Orders prohibited access to Grand Tour, it acknowledges that those orders permitted carry-out and delivery operations. Consequently, Select cannot establish a necessary prerequisite of coverage under the civil authority provision of the Policy. See 4431, Inc. v. Cincinnati Ins. Cos., No. 5:20-cv-04396, 2020 U.S. Dist. LEXIS 226984, at *32 (E.D. Pa. Dec. 3, 2020) ("Plaintiffs' ability to continue limited takeout and delivery operations at the premises precludes coverage under the Civil Authority provision: a prohibition on access to the premises, which is a prerequisite to coverage, is not present.").

Even if plaintiff could demonstrate that access to the Grand Tour restaurant was prohibited by the Government Orders, Select would not be entitled to civil authority coverage. To warrant civil authority coverage, access to the insured property must be prohibited by civil authority "as a result of the damage" to property other than the insured premises. Here, Select concedes that the issuance of the Government Orders was a preventative measure "to slow the spread of COVID-19." It makes

only conclusory allegations that those orders were issued "because of . . . damage to property." Furthermore, as noted above, the mere presence of the COVID-19 virus does not constitute property damage and Select does not identify any specific property to have been damaged. Such deficiencies are fatal to its claim. See Kamakura, LLC, 2021 WL 1171630, at *10-11.

Accordingly, Count II of the complaint will be dismissed with respect to the claim for coverage under the Policy's civil authority provision.

### 3. Chapter 93A Claim (Count III)

Strathmore seeks to dismiss Select's Chapter 93A claim, which is based on the allegedly unfair and deceptive investigation and denial of its insurance claim.

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," M.G.L. c. 93A, § 2(a). In the insurance context, specifically, an insurer does not violate Chapter 93A in denying coverage "so long as [it] made a good faith determination to deny coverage" even if the insurer's interpretation of the policy was incorrect. Ora Catering, Inc.

-13-

v. Northland Ins. Co., 57 F. Supp. 3d 102, 110-11 (D. Mass. 2014). Furthermore,

> [w]hen coverage has been correctly denied . . . no violation of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found.

Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins. Co., No. 14-13649-JCB, 2015 U.S. Dist. LEXIS 187495, at *24 (D. Mass. Sept. 22, 2015) (quoting Transamerica Ins. Co. v. KMS Patriots, 52 Mass. App. Ct. 189, 197 (2001)).

The Court has concluded that Strathmore correctly denied coverage under the Policy. Therefore, dismissal of the Chapter 93A claim is warranted.

### 4.   Declaratory Judgment (Count I)

Count I seeks a declaration that the Strathmore policies cover the claims of Select and the members of the putative classes and that no exclusion applies to bar or limit such coverage. Because the Court has determined that Select has failed to plead facts sufficient to demonstrate that it is entitled to coverage under the Policy, dismissal of Count I is inevitable.

**ORDER**

For the foregoing reasons, the motion of defendant to dismiss plaintiff's complaint (Docket No. 12) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated April 7, 2021